IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Walker D. Miller

Civil Action No. 05-cv-01994-WDM-BNB (consolidated with 05-cv-02468-WDM-BNB)

BILL THIEBAUT, in his official capacity as District Attorney for the Tenth Judicial
District of Colorado,
OFFICE OF THE DISTRICT ATTORNEY FOR THE TENTH JUDICIAL DISTRICT OF
COLORADO,
PEOPLE OF THE STATE OF COLORADO, and
SIERRA CLUB,

    Plaintiffs,

v.

COLORADO SPRINGS UTILITIES, an enterprise of the City of Colorado Springs, and
CITY OF COLORADO SPRINGS, a municipal corporation,

    Defendants.
_____

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT AND MOTION TO STRIKE
_____

Miller, J.

This matter is before me on three motions for summary judgment and a motion to strike. The first motion for summary judgment was filed by Plaintiff Sierra Club on December 8, 2006, the second by Defendant the City of Colorado Springs (Colorado Springs) the same day, and the third was filed December 9, 2006, by Plaintiffs Bill Thiebaut, the Office of the District Attorney for the Tenth Judicial District of Colorado, and the People of the State of Colorado (collectively Thiebaut). The motion to strike was filed on January 22, 2007, by all Plaintiffs. Oral argument was held on these matters April 27, 2007. For the reasons that follow, Thiebaut's motion will be denied, Colorado Springs' motion will be granted in part, Sierra Club's motion will be granted in part, and Plaintiffs' motion to strike will be denied as moot.

## Background

This case is a consolidation of two "citizen's suits" against Colorado Springs alleging violations of the Clean Water Act (CWA). The plaintiff in the first action is Bill Thiebaut, acting in his official capacity as District Attorney for the Tenth Judicial District of Colorado, on behalf of the District Attorney's office and the People of Colorado. The plaintiff in the second case is the Sierra Club. In general, the plaintiffs allege that Colorado Springs has violated the CWA through repeated "accidents" where they have discharged contaminants (often raw sewage) into Fountain Creek and its tributaries.

## Standard of Review

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. A factual issue is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

Where "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying 'a lack of evidence for the nonmovant on an essential element of the nonmovant's claim.'" *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998)). Then, "[t]o avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case." *Id.*

## Discussion

1.       Thiebaut's Standing

Colorado Springs and Thiebaut both move for summary judgment on the issue of Thiebaut's standing. Colorado Springs argues that Thiebaut lacks legal authority, and therefore standing, to bring a CWA case in federal court in any of the capacities in which he purports to act.[1] In contrast, Thiebaut argues that he has standing to bring this suit in three ways: (1) he has direct standing and authority to bring this suit under Colorado law; (2) he has *parens patriae* standing to bring this suit on behalf of the citizens of Colorado and of his district; and (3) he has associational standing.

As for direct standing, neither party presents any authority that the Colorado Legislature has either authorized district attorneys to bring CWA actions or prohibited them from doing so. As a result, the issue becomes whether a district attorney has the inherent power or authority to bring such an action. Colorado Springs argues that Thiebaut does not because the Colorado Legislature has not specifically authorized him to do so. In contrast, Thiebaut argues that district attorneys in Colorado have a broad, discretionary power to enforce law in their district unless the legislature specifically limits their authority.

In Colorado, district attorneys are constitutional officers. Article VI, § 13 of the Colorado Constitution provides: "District attorneys shall receive such salaries and perform such duties as provided by law." Colorado Springs urges that the plain meaning of this provision is that district attorneys have only such power as is

---

[1] Thiebaut claims authority to bring this action in his official capacity as District Attorney for the Tenth Judicial District of Colorado, on behalf of the District Attorney's office, the people of Colorado, and the people of his district.

3

prescribed by statute.[2]  In response, Thiebaut argues an inherent authority principally based upon an isolated statement by the Colorado Court of Appeals that "[o]rdinarily the district attorney has authority to prosecute all violations of law which occur in his judicial district."  *Harris v. Jefferson County Court*, 808 P.2d 364, 365 (Colo. Ct. App. 1991).  That statement, however, was merely *dicta*, unsupported by any citation or analysis, and was immediately followed by the language decisive to the opinion: "[h]owever, when the General Assembly authorizes a different body to prosecute a particular type of action, then the district attorney is without authority to act."  *Id.*  Read in its proper context, the case stands for the proposition that, as prescribed by C.R.S. § 20-1-102(1)(a), the district attorney is authorized by law to prosecute criminal charges within his district unless the General Assembly chooses to delegate that authority to a different body as it did for hazardous waste.  *See* C.R.S. § 25-15-308(2).

As the Colorado Court of Appeals also observed, when construing this constitutional provision and the related statutes I should "not strain to give language other than its plain meaning."  *Id*.  The plain meaning of Article VI, § 13 is that district attorneys will have such power and be paid such salaries as is provided by statute.  The Colorado Legislature has exercised that constitutional grant of power to delegate appropriate authority to district attorneys as exemplified by C.R.S. § 20-1-102 and many other statutes as well as providing for the compensation to be paid district attorneys.  *See* C.R.S. § 20-1-301.

---

[2] The parties dispute whether "such duties as provided by law" might include common law or case precedent.  This dispute is really not material because Thiebaut has not provided any precedent holding that he as the authority to bring this type of action or presented any argument asking for an extension of any common law.

4

Thiebaut bears the burden of establishing his standing to invoke federal jurisdiction. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). For the reasons stated, I conclude that he has failed to meet this burden regarding direct, official capacity standing.

I also find that Thiebaut has failed to demonstrate standing under the doctrine of *parens patriae*. In certain situations, this doctrine gives a state standing to sue on behalf its citizens. *See e.g.*, *Alfred L. Snapp & Son, Inc., v. Puerto Rico ex rel. Barez*, 458 U.S. 592 (1982). The doctrine is based, however, upon "the combination of [the] sovereign capacity of the state and [an] incompetence of citizens to act for themselves in [a] matter. *Bd. of County Comm'rs v. Denver Bd. of Water Comm'rs*, 718 P.2d 235, 241 (Colo. 1986). In this case, Thiebaut may not invoke the sovereign capacity of the state because, as discussed above, he has failed to demonstrate legal authority to bring this suit in his official capacity. In addition, as demonstrated by their actions through the Sierra Club, the citizens of Colorado are certainly able to act for themselves in this matter. Therefore, the *parens patriae* doctrine does not support Theibaut's standing claims.

Finally, Thiebaut's associational standing arguments fail for similar reasons. In order to establish associational standing, an association must demonstrate that: "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977). Even

assuming that the Tenth Judicial District is an "association" and its citizens are "members," Thiebaut's argument still fails on the second element. As to this element, Thiebaut argues that protection of public health, safety and welfare is germane to his office's purpose. However, if Thiebaut's office does not have authority under Colorado law to bring a civil CWA action in federal court, then it cannot be said that such an action is germane to his office's purpose.

In sum, Thiebaut has not demonstrated legal authority under Colorado law to bring this action in his official capacity, or on behalf of the District Attorney's office, the people of his district, or the State of Colorado. Therefore, Colorado Springs' motion for summary judgment will be granted to the extent it asks for dismissal of all of Thiebaut's claims due to lack of standing. Correspondingly, Thiebaut's motion for summary judgment will be denied.

2.  Colorado Springs' "Wholly Past" Defense

In its motion, Colorado Springs argues that all of Sierra Club's claims are barred because they are "wholly past." 33 U.S.C. § 1365(a)(1) authorizes a citizen to commence a civil action "against any person . . . who is alleged to be in violation of" the standards of the CWA. The Supreme Court has held that "[t]he most natural reading of 'to be in violation' is a requirement that citizen-plaintiffs allege a state of either continuous or intermittent violation-that is, a reasonable likelihood that a past polluter will continue to pollute in the future." *Gwaltney of Smithfield, Ltd., v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 56 (1987) ("Gwaltney I"). According to Colorado Springs, all of Sierra Club's claims are wholly past because they are isolated, unrelated events,

and this court therefore lacks subject matter jurisdiction to entertain this action. *See Sierra Club v. El Paso Gold Mines, Inc.*, 421 F.3d 1133, 1139 (10th Cir. 2005) (treating issue as one of subject matter jurisdiction).

In response, Sierra Club argues that this defense is undermined by the numerous illegal discharges of raw sewage or non-potable water into Fountain Creek since Sierra Club's complaint was filed in this action. *See Am. Canoe Ass'n v. Murphy Farms*, 412 F.3d 536, 539 (4th Cir. 2005) (holding that plaintiffs may establish an ongoing violations "either (1) by proving violations that continue on or after the date the complaint is filed, or (2) by adducing evidence from which a reasonable trier of fact could find a continuing likelihood of a recurrence in intermittent or sporadic violations," and noting that "[i]ntermittent or sporadic violations do not cease to be ongoing until the date when there is no real likelihood of repetition") (quoting *Chesapeake Bay Found., Inc. v. Gwaltney of Smithfield, Ltd.*, 890 F.2d 170, 171-72 (4th Cir. 1988) ("Gwaltney II")).

I agree with Sierra Club. Colorado Springs does not deny that it has had repeated incidents since this action started, and it does not explain why a rational factfinder would not find "a reasonable likelihood that [it] will continue to pollute in the future," *Gwaltney I*, 484 U.S. at 56. Therefore, Colorado Springs has not demonstrated entitlement to summary judgment on this issue.

3.  <u>Res Judicata</u>

Colorado Springs also argues that the doctrine of res judicata (or claim preclusion) bars all of Sierra Club's claims. It is undisputed that the Colorado

7

Department of Public Health and Environment (CDPHE), the state administrative agency authorized to enforce both the state and federal clean water laws, has issued a series of final compliance orders in response to all of the violations alleged by Sierra Club. Colorado Springs argues that these orders act as final judgments on the merits for res judicata purposes, and that all of the elements of Colorado res judicata law are satisfied in this case. *See Salguero v. City of Clovis*, 366 F.3d 1168, 1173 (10th Cir. 2004) (holding that "when a state agency (1) acts in a judicial capacity; (2) resolves disputed issues of fact properly before it; and (3) the parties have had an adequate opportunity to litigate the issue," its decision is entitled to the same preclusive effect it would have received in state court) (internal quotations omitted); *Cruz v. Benine*, 984 P.2d 1173, 1176 (Colo. 1999) (listing res judicata elements as "(1) finality of the first judgment, (2) identity of subject matter, (3) identity of claims for relief, and (4) identity or privity between parties to the actions").

Sierra Club responds that Congress has the authority to limit the application of res judicata, and has implicitly done so in 33 U.S.C. § 1319(g)(6). I agree. § 1319(g)(6)(A)(iii) generally bars citizen's suits for violations that have been the subject of non-appealable administrative penalties.[3] However, § 1319(g)(6)(B), provides that this bar does not apply if either a citizen's suit has been filed under § 1365 "prior to commencement of an action under this subsection" (the administrative penalties

---

[3] Specifically, this subsection provides that when a state has "issued a final order not subject to further judicial review and the violator has paid a penalty assessed under" a state law comparable to subsection (g) (providing for administrative penalties without the necessity of an action in court), then the violation at issue "shall not be the subject of a civil penalty action . . . under section 1365" (which authorizes citizen's suits). § 1319(g)(6)(A)(iii).

8

subsection), or notice under the citizen's suit provisions has been given prior to the commencement of such action and a citizen's suit is "filed before the 120th day after the date on which such notice is given."  Thus, Congress clearly contemplated some situations where a violation that has been the subject of final state administrative action under § 1319(g)(6)(A)(iii) could nonetheless "be the subject of a civil penalty action under the citizen's suit provision," § 1319(g)(6)(B).

Colorado Springs does not deny that the statute contemplates such a situation, and does not deny that Congress has the authority to limit the applicability of res judicata.  Moreover, Colorado Springs admits that in such a situation (where both §§ 1319(g)(6)(A)(iii) and (g)(6)(B) apply), the statute indicates that a citizen's suit may be initiated.  Nonetheless, Colorado Springs maintains that this does not necessarily mean that Congress intended for these suits to be able to proceed to a judgment on the merits.  In support of this argument, Colorado Springs argues that "the courts have consistently held that Congress in the CWA did not 'abrogate' or 'limit' *res judicata*." (Def.'s Reply to Sierra Club, Docket No. 171, at 5.)  The three cases Colorado Springs cites for this proposition, however, are unpersuasive.  The first case, *United States v. ITT Rayonier, Inc.*, 627 F.2d 996 (9th Cir. 1980), was decided before Congress amended § 1319 in 1987 to add the subsection that is critical to Sierra Club's argument — subsection (g), which provides for administrative penalties without the necessity of an action in court.  The second case, *Citizens Legal Envtl. Action Network, Inc. v. Premium Standard Farms, Inc.*, No. 97-6073-CV-SJ-6, 2000 WL 220464, at *12 n.16 (W.D. Mo. Feb. 23, 2000), relies entirely upon *ITT Rayonier.*  And, the passage

9

Colorado Springs relies on from their third case, *Froebel v. Meyer*, 13 F. Supp. 2d 843, 861-62 (E.D. Wis. 1998), does not deal with either claim preclusion or § 1319(g)(6). Finally, and most importantly, Colorado Springs never explains why Congress would specifically provide for citizens to bring an action in a situation where it appears that res judicata would always bar their suit from reaching a judgment on the merits.[4]

Therefore, I conclude that Congress intended to limit the applicability of res judicata in situations where both §§ 1319(g)(6)(A)(iii) & (B) apply. However, the parties' briefs are inadequate to allow me to discern, for *each* of the alleged violations, *see Old Timer, Inc., v. Blackhawk-Central City Sanitation Dist.*, 51 F. Supp. 2d 1109, 1118 (D. Colo. 1999) (J. Lucero) (noting that "each permit violation gives rise to a separate cause of action"), what the parties' respective positions are on: (1) when Sierra Club gave adequate notice regarding that violation, and (2) when the state commenced an administrative action regarding that violation. Therefore, Colorado Springs' has failed to demonstrate entitlement to relief, and its motion will be denied without prejudice as to this issue.

4.  Notice

Sierra Club recently amended its complaint to add twelve new alleged violations.

---

[4] As noted, the four elements of Colorado res judicata law are: "(1) finality of the first judgment, (2) identity of subject matter, (3) identity of claims for relief, and (4) identity or privity between parties to the actions." *Cruz v. Benine*, 984 P.2d 1173, 1176 (Colo. 1999). These elements are not unique to Colorado. And by definition, when §§ 1319(g)(6)(A)(iii) & (B) apply, there will always be a final judgment, identity of subject matter, and identity of claims. Finally, there will also be privity between the parties because the Tenth Circuit has held that "[w]hen a state litigates common public rights, the citizens of that state are represented in such litigation by the state and are bound by the judgment." *Satsky v. Paramount Commc'ns, Inc.*, 7 F.3d 1464, 1470 (10th Cir. 1993).

Colorado Springs argues that with the exception of two,[5] all of these newly alleged violations must be dismissed because Sierra Club failed to give adequate notice of its intent to sue regarding these violations.

The Clean Water Act clearly mandates that citizens must give proper notice of intent to sue at least sixty days before they commence a private enforcement action. 33 U.S.C. § 1365(b).[6] The contents of this notice are prescribed by the Environmental Protection Agency (EPA), *id.*, which has established the following standards:

> Notice . . . shall include sufficient information to permit the recipient to identify the specific standard, limitation, or order alleged to have been violated, the activity alleged to constitute a violation, the person or

---

[5] For reasons not entirely clear, Colorado Springs excepts the April and June 2006 alleged violations.

[6] It is not clear whether this requirement is essential to this court's subject matter jurisdiction. In *Hallstrom v. Tillamook County*, 493 U.S. 20, 31 (1989), the Supreme Court stressed that an essentially identical provision in the Resource Conservation and Recovery Act was a "mandatory condition[] precedent to commencing suit," but expressly declined to determine whether this requirement was "jurisdictional in the strict sense." *Id.* In the wake of *Hallstrom*, the federal courts of appeals have split on this issue. *Compare, e.g.*, *Waterkeepers N. Cal. v. Ag Indus. Mfg., Inc.,* 375 F.3d 913, 916 (9th Cir. 2004) (compliance required for jurisdiction) *with Am. Canoe Ass'n v. City of Attalla*, 363 F.3d 1085, 1088 (4th Cir. 2004) (agreeing with 5th Circuit that "the notice requirement is more procedural than jurisdictional"). The Tenth Circuit has thus far not taken an express position, *cf. N.M. Citizens for Clean Air & Water v. Espanola Mercantile Co.*, 72 F.3d 830, 833 n.2 (1996) (finding it unnecessary to decide the "intriguing" question left open by *Hallstrom*), but a recent case strongly points toward a truly jurisdictional interpretation, *see Karr v. Hefner*, 475 F.3d 1192, 1196, 1206 (10th Cir. 2007) (affirming sua sponte dismissal due to inadequate notice). If indeed the notice requirements are jurisdictional in the strict sense, then this issue may not be waived, and this court has an independent duty to examine its own jurisdiction. *Image Software, Inc. v. Reynolds & Reynolds Co.*, 459 F.3d 1044, 1048 (10th Cir. 2006). However, as discussed above, the parties' briefs are inadequate to allow me to determine whether adequate notice has been given for each and every alleged violation. Therefore, the parties are encouraged to file, by September 10, 2007, a trial brief addressing this issue.

> persons responsible for the alleged violation, the location of the alleged violation, the date or dates of such violation, and the full name, address, and telephone number of the person giving notice.

40 C.F.R. § 135.3; *see also Karr v. Hefner*, 475 F.3d 1192,1200 (10th Cir. 2007).

Sierra club first argues that, contrary to Colorado Springs' arguments, it actually did give notice regarding its newly alleged violations. It is clear, however, that in making this assertion, Sierra Club is depending upon the efficacy of catchall language it included in its original notice letter. There, Sierra Club purported to give notice regarding "all unauthorized discharges which are not specifically listed in this letter . . . plus any additional unauthorized discharges that may occur in the future." (Aug. 9, 2005 Notice Letter, Ex. A to Sierra Club's Third Amended Complaint, Docket No. 226.) Such broad language, however, is clearly not sufficient. *See Karr*, 475 F.3d at 1200 (emphasizing that notice must do more than "generally orient[] the agency or violator as to the type of violation" because the recipient must be able to determine "what the citizen *is alleging*-not what the citizen could allege if the citizen knew more or cared about other possible transgressions") (quoting *Cal. Sportfishing Prot. Alliance v. City of W. Sacremento*, 905 F. Supp. 792, 799 (E.D. Cal. 1995) (emphasis in original)); *Atl. States Legal Found., Inc. v. United Musical Instruments, U.S.A., Inc.*, 61 F.3d 473, 478 (6th Cir. 1995) (holding that plaintiff's notice of intention to sue for "violations not yet known" was inadequate).

Second, Sierra Club argues that even if it did not give specific notice regarding its newly alleged violations, notice of other, similar, claims was effectively notice for these new claims as well. To support this argument, Sierra Club relies primarily upon

12

*Pub. Interest Research Group of N.J., Inc. v. Hercules, Inc.*, 50 F.3d 1239 (3d Cir. 1995). In that case, the Third Circuit held that new notice is not required if the new claims are sufficiently similar to previously noticed claims. According to Sierra Club, under *Hercules*, their new claims are sufficiently similar to their earlier claims because they are all: "(1) discharges of wastewater or untreated sewage; (2) from the sewage collection system; and (3) at points not authorized under the permit." (Sierra Club's Supp. Resp., Docket No. 236, at 4.)

As an initial matter, other courts have adopted a more strict interpretation of the notice requirements. *See Cal. Sportfishing*, 905 F. Supp. at 797-99 (comparing *Hercules* with *Wash. Trout v. McCain Foods, Inc.*, 45 F.3d 1351 (9th Cir. 1995), and finding the Ninth Circuit's "strict approach" to be more appropriate). But even under *Hercules*, I disagree with Sierra Club's contention that such general similarities suffice, especially in the context of large city's sewer system.[7] However, the evidence is unclear with regard to similarities between the new and old claims. Arguably I could conclude that Sierra Club has not met its Rule 56(e) burden. However, since evidence of these issues will presumably be presented at trial with regard to the related res judicata issues, I conclude that genuine issues of fact remain and the motion should be denied without prejudice.

5.  <u>Colorado Springs' Liability</u>

In its motion, Sierra Club argues that it is entitled to summary judgment on the

---

[7] In contrast to the allegations involved in this case — violations occurring at numerous locations throughout Colorado Springs' sewer system — the violations in *Hercules* appear to have been limited to a single facility and two specific locations.

13

issue of liability. However, as discussed above, I cannot yet determine whether res judicata bars some or all of Colorado Springs' claims. Therefore, as to this issue, Sierra Club's motion will be denied without prejudice.

6.    <u>Sierra Club's Standing</u>

Sierra Club also asks for summary judgment on the issue of its associational standing. In order to demonstrate associational standing, Sierra Club must establish: "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977). Colorado Springs challenges only the first of these three prongs. In order to meet this prong, Sierra Club must demonstrate that its members: "ha[ve] suffered an injury in fact that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by the relief requested." *Tandy v. City of Wichita*, 380 F.3d 1277, 1283 (10th Cir. 2004).

Colorado Springs does not dispute that Sierra Club has produced sufficient evidence from which a reasonable factfinder could conclude that it has met each of these elements. Nonetheless, Colorado Springs argues that summary judgment should not be granted because it would like to challenge Sierra Club members' testimony at trial. Colorado Springs does not, however, present any evidence casting doubt on the

members' testimony, and does not even significantly develop any argument why these members' currently uncontradicted and unimpeached testimony should not be believed. As such, Colorado Springs appears to fundamentally misunderstand its burden in responding to a motion for summary judgment. The city cannot simply rest on bald promises as to what it may do at trial, but it "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

Colorado Springs also claims that it will prove at trial that the impairment of Fountain Creek is caused by many sources other than its discharges. Even if these promises, which again appear unsupported by specific evidence, were sufficient under Rule 56(e), this argument still fails, because in order to have standing, CWA plaintiffs "need not sue *every* discharger in one action, since the pollution of any one may be shown to cause some part of the injury suffered." *Pub. Interest Research Group of N. J., Inc., v. Powell Duffryn Terminals Inc.*, 913 F.2d 64, 72 n.8 (3d Cir. 1990). Therefore, Sierra Club's motion for summary judgment will be granted as to standing.

7.   Motion to Strike

Finally, Plaintiffs have also moved to strike portions of a declaration from Keith Riley, which was filed by Colorado Springs along with its response to Thiebaut's motion for summary judgment. However, since none of the rulings discussed above rely in any way upon this deposition, this motion will be denied as moot.

Accordingly, it is ordered:

1.   The motion for partial summary judgment filed on December 9, 2006, by Plaintiffs Bill Thiebaut, the Office of the District Attorney for the District of

15

Colorado, and the People of the State of Colorado (Docket No. 115), is denied.

2. Defendant's motion for summary judgment, filed December 8, 2006 (Docket No. 112), is granted in part and denied in part. This motion is granted to the extent Defendant seeks dismissal of all claims brought by Plaintiffs Bill Thiebaut, the Office of the District Attorney for the District of Colorado, and the People of the State of Colorado. The motion is denied as to Defendant's "wholly past" defense, and denied without prejudice as to Defendant's res judicata and notice defenses.

3. All claims filed by Plaintiffs Bill Thiebaut, the Office of the District Attorney for the District of Colorado, and the People of the State of Colorado are dismissed.

4. Plaintiff Sierra Club's motion for summary judgment, filed December 8, 2006 (Docket No. 110), is granted as to standing, and otherwise denied without prejudice.

5. Plaintiffs' motion to strike, filed January 22, 2007 (Docket No. 165), is denied as moot.

DATED at Denver, Colorado, on August 29, 2007.

BY THE COURT:


s/ Walker D. Miller
United States District Judge